UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANAI B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C23-667-BAT <br><br> **ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEDURES** |

Plaintiff Janai B. seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred in evaluating the medical opinions and failed to account for all her limitations in assessing her residual functional capacity. Dkt. 13. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 32 years old, has a high school education, and has worked as a teacher aide, cafeteria counter attendant, and receptionist. Tr. 27. She applied for benefits in February and September 2021, alleging disability as of October 1, 2020. Tr. 174, 176. After her applications were denied initially and on reconsideration, the ALJ conducted a hearing and, on December 13, 2022, issued a decision finding plaintiff not disabled. Tr. 16-29. The Appeals

Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date; she had the following severe impairments: status post cerebrovascular accident and patent foramen ovale closure; iron deficiency anemia; obesity; neurocognitive disorder unspecified; anxiety; and attention-deficit hyperactivity disorder; and these impairments did not meet or equal the requirements of a listed impairment. Tr. 18-19. The ALJ found that plaintiff had the residual functional capacity to perform light work with additional physical limitations and with the following mental limitations: she can understand, remember, and carry out simple, routine, and repetitive tasks requiring no more than 1-2-3 step instructions and involving only simple work-related decisions and occasional decision making and changes in the work setting, and she can never perform assembly line work. Tr. 21. The ALJ found that plaintiff could not perform her past relevant work but, as there were jobs that exist in significant numbers in the national economy that she could perform, plaintiff was not disabled. Tr. 27-29.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

(9th Cir. 2002). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Id.*

A.   **Medical opinions**

Plaintiff argues that the ALJ erred in weighing the medical opinions. Dkt. 3 at 3. When considering medical opinions (for applications filed on or after March 27, 2017), the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in her decision how she considered the factors of supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ is not required to explain how she considered the other factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). The new regulations supplant the hierarchy governing the weight an ALJ must give medical opinions and the requirement the ALJ provide specific and legitimate reasons to reject a treating doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). An ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Id.*

1.   *Stephen Horras, M.D., and Jenna Williams, OT*

Dr. Horras, plaintiff's primary care physician, opined in April 2022 that plaintiff experienced excessive fatigue, word-finding difficulty, and a mood disorder that included depression and anxiety; he did not believe that she was a malingerer. Tr. 883. He opined that plaintiff was capable of performing low stress jobs with frequent breaks, stating that she is bright

and capable but becomes easily fatigued. Tr. 884. He opined that plaintiff would be absent from work more than four days per month due to her impairments. Tr. 885. He opined that plaintiff's frequent fatigue and somewhat slower processing time make her anxiety worse and can contribute to challenging work situations. *Id.*

Ms. Williams, plaintiff's treating occupational therapist, opined in September 2022 that plaintiff experienced fatigue, cognitive deficits (including attention, memory, task organization, and planning), headache, depression, and hypersensitivity to auditory and visual stimuli. Tr. 1075. On objective testing, plaintiff demonstrated high levels of fatigue; decreased attention, processing, cognitive flexibility, and task switching; and difficulty managing auditory and visual sensory stimuli. Tr. 1075-76. Plaintiff's challenges with cognition, fatigue, and depression would limit her ability to work at a regular job on a sustained basis. Tr. 1076-77. Ms. Williams opined that plaintiff was not capable of even low stress jobs and that she would be absent from work at least eight days per month or more if the workdays were eight-hour days; she did not believe that plaintiff was a malingerer. Tr. 1070-72. Dr. Horras affirmed Ms. Williams' opinion. Tr. 1084.

The ALJ found these opinions not persuasive. Tr. 25. The ALJ found that occupational therapy treatment notes supported some chronic limitations and that objective testing reflected at least mild to moderate cognitive impairment. *Id.* The ALJ found, however, that the extreme limitations opined by Dr. Horras and Ms. Williams appeared to rely heavily on plaintiff's subjective reports, which the ALJ found inconsistent with her level of activity reported elsewhere in the record. *Id.*

The ALJ's sole reason for finding these opinions not persuasive was, therefore, that they appeared to rely heavily on plaintiff's reports. But an ALJ does not provide a valid reason for rejecting a medical opinion by questioning the credibility of the patient's complaints where the

doctor does not discredit those complaints and supports her ultimate opinion with her own observations. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008). Moreover, as plaintiff points out (Dkt. 13 at 11), the ALJ's finding is speculative, stating that the providers "appear" to rely heavily on plaintiff's subjective reports. The ALJ did not identify, and the Court could not discern, anything in either opinion to suggest that the providers were merely repeating plaintiff's subjective complaints rather than relying on their clinical observations and expertise. Indeed, as the ALJ noted, Ms. Williams's treatment notes supported the existence of chronic limitations, and objective testing supported her opinion of cognitive impairment. The ALJ's conjecture that these providers relied on plaintiff's subjective reports is unsupported by the evidence and fails to provide a valid reason for finding these opinions not persuasive. This constituted harmful legal error in the assessment of the medical opinions and requires that the ALJ reweigh the opinions on remand.

   2.  *Heather MacDonald, Psy.D.*

  Dr. MacDonald examined plaintiff via telehealth in June 2021. Tr. 683. She related that plaintiff was largely unable to respond to the examination questions and that the audio and video connection was disturbed and it was difficult to hear plaintiff; plaintiff was often silent and stared blankly at Dr. MacDonald when asked a question. Tr. 683-84. Dr. MacDonald opined that plaintiff could not manage own funds given that she was unable to respond to most interview questions; she would have difficulty performing simple and repetitive tasks as well as complex and detailed tasks; she would have no difficulty accepting instructions from supervisors in that she was willing to engage with doctor but was having cognitive difficulties; and she would have difficulty interacting with coworkers and the public, performing work activities on a consistent basis without special or additional instructions, maintaining regular attendance and completing a

normal workday/work week, and dealing with usual stress of a workplace, all due to cognitive impairment and executive functioning difficulty. Tr. 685-86.

The ALJ found that Dr. MacDonald's observations were concerning and offered support for the limitations she opined, but this was a one-time examination that was inconsistent with plaintiff's presentation at other appointments throughout the record. Tr. 26. The ALJ noted that while plaintiff had at times been found to show confusion, such as with filling out paperwork, she was not so limited as to be almost entirely unable to respond to questions asked. *Id.* The ALJ also noted that such extreme limitations were not noted in behavioral health treatment notes. *Id.* The ALJ therefore found that Dr. MacDonald's opinion was not persuasive as to plaintiff's overall functionality within 12 months of her stroke. *Id.*

Plaintiff argues that contrary to the ALJ's finding, her presentation at Dr. MacDonald's examination was consistent with the observations and reported symptoms of her speech and OT providers, including wordfinding difficulties and sensory limitations related to fatigue. Dkt. 13 at 15. However, although plaintiff points to records where providers noted memory, attention, and wordfinding difficulties (Tr. 481, 484, 486), she does not point to treatment notes documenting the level of non-responsiveness observed by Dr. MacDonald. Indeed, in the treatment notes plaintiff identifies, her providers noted her ability to successfully engage in cognitive and linguistic therapies. Plaintiff has not established that the ALJ's assessment of Dr. MacDonald's opinion as far outside the norm of plaintiff's presentation with her treating providers was not supported by the evidence.

B.     **RFC finding**

Plaintiff asserts that all the medical opinions, including the ones the ALJ found persuasive, opined greater limitations in plaintiff's need to take breaks, be absent from work,

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEDURES - 6

and/or be restricted from fast-paced environment than the ALJ found. Dkt. 3 at 10. In addition to the opinions discussed above, she notes that the state-agency consultants opined that plaintiff would not be able to perform her past work in part because she would not be able to sustain the concentration needed in that fast-paced work environment, and that she was moderately limited in her ability to complete a normal workday and workweek and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 76, 87.

The ALJ found the state agency consultants' opinions to be not entirely persuasive, finding that the limitations they opined were not entirely consistent with the record as a whole. Tr. 26. The ALJ stated that he specified that plaintiff could not perform assembly line work instead of stating that she would have difficulty performing in a fast-paced setting as the state agency doctor had opined, and that he used more policy-compliant language to address plaintiff's ability to respond to changes and decision-making. *Id.* Other than precluding plaintiff from performing assembly line work, the ALJ included no other limitations related to pace, and the ALJ did not address a need for additional or unscheduled breaks or absenteeism. Tr. 21.

The ALJ did not explain how precluding plaintiff from performing assembly line work accommodates the consultant's opinion that plaintiff could not perform her past work (which was not assembly line work) because of the fast-paced work environment. This omission, in addition to the ALJ's error in assessing Dr. Horras' and Ms. Williams' opinions, which included additional limitations on pace, time off-task, and absenteeism, further undermines the RFC finding. The ALJ is directed to carefully consider the appropriate limitations in these areas after reevaluating the persuasiveness of the medical opinions.

Plaintiff also argues that the ALJ erred by failing to consider plaintiff's need for "psychosocial supports," including assistance from family and friends, to function at the level

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEDURES - 7

demonstrated in the record. Dkt. 13 at 15-16. She asserts that this omission requires remand for the ALJ to consider the issue in the first instance. *Id.* Because the Court is remanding this case for reevaluation of the medical opinions, the ALJ shall also consider the extent to which plaintiff requires psychosocial supports to function.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate the persuasiveness of the medical opinions. The ALJ shall further develop the record and redo the five-step disability evaluation process as necessary and appropriate to make a new decision.

DATED this 1st day of December, 2023.

BRIAN A. TSUCHIDA  
United States Magistrate Judge